**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TARA PATRICK TAYLOR,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-7466** |
| | : | |
| **U.S. MEDICAL STAFFING,** | : | |
| **Defendant.** | : | |

# MEMORANDUM

**YOUNGE, J.** **OCTOBER 15, 2026**

Plaintiff Tara Patrick Taylor initiated this *pro se* civil action against U.S. Medical Staffing ("USMS"). Taylor seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Taylor leave to proceed *in forma pauperis* and dismiss the Complaint.

## I. FACTUAL ALLEGATIONS[1]

Taylor states that she worked as an independent contractor for USMS. (Compl. at 1.) On September 11, 2026, USMS coordinator Shannon Anderson called Taylor and requested that she "call Shannon or Dawn . . . back." (*Id.*) That same day, Taylor received an email message informing her "to not report to any Kencrest work sites due to there is an investigation taking place at Kencrest." (*Id.*) Taylor asked Anderson if she was the subject of the investigation and was told "they do not have any information in regards to the investigation." (*Id.*) Taylor asserts that before she accepted any assignments from USMS, she informed them that she was "in a Domestic Violence Victim Protected Class." (*Id.*) She also states that she "reported several

[1] The following allegations are taken from the Complaint and documents attached to the Complaint. The Court adopts the sequential pagination supplied by the CM/ECF docketing system to the filings in this case.

instances of workplace bullying and work sabotage from Kencrest staff to Shannon Anderson, Dawn Pacheo, Lynn Johnson, Nikita Ellis, Tia Gibbs, and Erika Curry, and Kencrest Compliance hotline." (*Id.*) Taylor reported to Pacheo and Anderson "on numerous occasions" that Kencrest staff accused Taylor "of sleeping on duty, eating food that does not belong to her without permission, being neglectful to clients, [and] poor performance issues." (*Id.*) Taylor "slept at the work site one time before her shift on the sofa in which she was not clocked in. All other times [Taylor] rested on the bean bags in the clients['] rooms with her eye closed not sleeping." (*Id.*) Taylor was told that Kencrest staff took pictures of her "making it appear that she was sleeping on duty" when she "was resting her eyes and had previously communicated to staff that she was resting her eyes so that they would not think that she was sleeping." (*Id.* at 1-2.) Taylor denies that she slept while on duty, but "Natasha Anderson" commented that she did. (*Id.* at 2.) Taylor requested "to be moved to another work site but the move did not take place." (*Id.*)

In August 2026, Pacheo called Taylor and requested that Taylor refrain from sending her pictures, suggesting that doing so was in violation of Health Insurance Portability and Accountability Act ("HIPAA") as they "were unidentifying [sic] pictures of clients." (*Id.*) Taylor asserts that she sent the pictures because Kencrest employees made "false statements" that she did not know how to apply diapers correctly. (*Id.*) She asserts this was "Sex Discrimination (Domestic Violence Victim Protected Class)." (*Id.*) Taylor contends that she participated in USMS's HIPAA training and did not violate HIPAA when she sent photos to Pacheo. (*Id.*) She further contends that Pacheo and Anderson emailed literature about HIPAA compliance to her and called her regarding the incident, which constituted "Employer Related Emotional Distress." (*Id.*)

Additionally, Taylor states that her paycheck was short "by small amounts weekly" and she emailed Pacheo and Anderson "on numerous occasions" regarding the payroll shortages. (*Id.*) Taylor states, however, that she "instructed U.S. Medical Staffing to deduct from her payroll for food that Kencrest Staff had given her, a sanitary pad that had to be used due to an emergency situation, lotion and perfume that was used by a mistake by [Taylor] and a bowl that had to be thrown out." (*Id.*) Pacheo and Anderson "were supposed to deduct $35.00" for these items, but Taylor asserts that $183.21 was deducted over "the prior weeks." (*Id.*) She again asserts that Anderson "was made aware of [Taylor's] Domestic Violence Victims Protected Class" before she accepted "this assignment" with USMS. (*Id.*)

Taylor also claims that USMS "breached employment contract (Material Breach – Employment Agency placed Contractor on Suspension and did not give Contractor a reason for the Suspension other than there was [an] investigation going on at Kencrest and to not report to any Kencrest sites." (*Id.*) The "Kencrest Compliance Director Informed Contractor" that she was not aware of any investigation at Kencrest. (*Id.*) Taylor also alleges "Minor Breach minor payroll shortages on a weekly basis" and "Actual Breach notify [Taylor] that Kencrest [had] received the food that their employees gave [Taylor], the bowl that [Taylor threw] in the trashcan, the sanitary pad that contractor had to use in an emergency situation." (*Id.*) Taylor filed a complaint with the Equal Employment Opportunity Commission in August 2026 and was suspended in September 2026. (*Id.*) She contends that this constitutes retaliation. (*Id.*) In support of these allegations, Taylor attached to the Complaint a copy of the EEOC's Notice of Right to Sue Letter dated September 18, 2026. (ECF No. 2-1 at 1.)

As relief, Taylor requests USMS to pay "Tara Patrick Taylor Incorporated $3000 a month beginning October 1, 2026 in order to assist with the Operations of Tara Patrick Taylor

Incorporated." (Compl. at 3.) Although Taylor "was going to end the ongoing assignment 9/21/26 and pick up shifts PRN, the suspension without a cause caused [Taylor] Psychological trauma but not enough for a Mental Health Diagnosis." (*Id.*) She also wants USMS to be required to staff Tara Patrick Taylor Incorporated with "Licensed Health Care Professionals as requested by [her] in order to maintain the Professional Licensing Board qualifications in order to operate a 3-5 bed residential facility for consumers with Mental Disorders as well as Fee for Service Licensed Psychologist and Licensed Professional Counselors in order to Provide Mental Health Therapy Sessions Via Telehealth and at Tara Patrick Taylor Incorporated." (*Id.*)

## II. STANDARD OF REVIEW

Because Taylor appears to be unable to pay the filing fee in this matter, the Court will grant her leave to proceed *in forma pauperis*. Accordingly, the Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B), which requires the Court to dismiss the Complaint if, *inter alia*, it is frivolous or fails to state a claim. A complaint is subject to dismissal under § 1915(e)(2)(B)(i) as frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). It is legally baseless if "based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995), and factually baseless "when the facts alleged rise to the level of the irrational or the wholly incredible," *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At the screening stage, the Court will accept the facts alleged in a *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

The Court construes the allegations of a *pro se* litigant liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant also "cannot flout procedural rules - they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245). Additionally, the Court must review the Complaint and dismiss the matter if it determines that subject matter jurisdiction is lacking. *See* Fed. R. Civ. P. 12(h)(3); *Grp. Against Smog & Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").

**III. DISCUSSION**

Taylor's Complaint characterizes her claims as "Employer Related Emotional Distresses, Sex Discrimination (Domestic Violence Victim Protected Class), Standard Breach of Trust,

Human Trafficking, Breach of Contract, and Retaliation." (Compl. at 1.) Taylor's allegations are rambling and disorganized, but are best construed as presenting employment discrimination claims under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e-2000e-17 ("Title VII"), as well as state law tort and breach of contract claims. *See Mala*, 704 F.3d at 245 (stating that a court will "apply the relevant legal principle even when the complaint has failed to name it"). Even liberally construing her Complaint, however, Taylor fails to present a plausible claim.

**A. Federal Law Claims**

Federal law "proscribe[s] discrimination in employment based on several personal characteristics" including race, color, religion, sex, or national origin. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing, *inter alia*, 42 U.S.C. § 2000e-2(a)). Title VII also prohibits an employer from retaliating against an employee for opposing any act made unlawful by the employment discrimination statutes, or because she made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the employment discrimination statutes. *See* 42 U.S.C. § 2000e-3(a); *Allstate Ins. Co.*, 778 F.3d at 449. "A plaintiff alleging employment discrimination under Title VII must demonstrate that an employment relationship existed with the defendant." *Payne v. Prevention Point Philadelphia, Inc.*, No. 21-2173, 2022 WL 796184, at *2 (3d Cir. Mar. 15, 2022) (*per curiam*) (citing *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 355-56 (2013) (citing 42 U.S.C. § 2000e-2(a)-(d) and explaining that Title VII forbids discrimination by employers))).

Putting aside whether Taylor has plausibly pled that she is a member of a protected class who has been subjected to intentional discrimination or retaliation on a basis made illegal by

Title VII, Taylor's Title VII claims must be dismissed because she represents that she was an independent contractor, not an employee of USMS, (*see* Compl. at 1), and Title VII does not apply to independent contractors. *See* 42 U.S.C.A. § 2000e(f) ("The term 'employee' means an individual employed by an employer"); *see also Hill-Keyes v. Comm'r of The United States Soc. Sec. Admin.*, 658 F. App'x 86, 90 (3d Cir. 2016) (*per curiam*) (affirming grant of defendant's motion for summary judgment holding that plaintiff could not recover under Title VII because she was an independent contractor); *Hill-Keys v. Colvin*, No. 13-2852, 2016 WL 7654653, at *3 (E.D. Pa. Mar. 11, 2016) ("Title VII protects employees; it does protect independent contractors." (citing *Covington*, 710 F.3d at 119; *Kahn v. Am. Heritage Life Ins. Co.*, 324 F. Supp. 2d 652, 655 (E.D. Pa. 2004))). Accordingly, Taylor's Title VII claims will be dismissed with prejudice pursuant to § 1915(e)(2)(B)(ii).

**B. State Law Claims**

It appears that Taylor seeks to present state law claims, including tort and breach of contract, against USMS. Because the Court has dismissed Taylor's federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which "means that, unless there is some other basis for jurisdiction, no plaintiff may be a citizen of the same state as any defendant." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli*

*Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa, LLC*, 652 F.3d 340, 344 (3d Cir. 2011). For diversity purposes, a corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business. *See* 28 U.S.C. § 1332(c).

It is the plaintiff's burden to establish diversity of citizenship. *Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *see also Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met). Taylor has not met this burden. She does not allege the citizenship of the parties, although she provides a Pennsylvania address for herself. Moreover, to the extent Taylor seeks monetary relief, the Complaint fails to satisfy the amount in controversy requirement. "As a general rule, [the amount in controversy] is determined from the good faith allegations appearing on the face of the complaint." *Spectacor Mgmt. Grp. v. Brown*, 131 F.3d 120, 122 (3d Cir. 1997) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). "The sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Dardovitch v. Haltzman*, 190 F.3d 125, 135 (3d Cir. 1999) (quoting *St. Paul Mercury Indem. Co.*, 303 U.S. at 288-89)). The "temporal focus of the court's evaluation . . . is on the time that the complaint was filed." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016) (citations omitted; alteration in original). Here, Taylor states that USMS failed to pay her $183.21. (Compl. at 2.) Thus, Taylor's alleged losses do not plausibly exceed the $75,000 threshold required to establish diversity jurisdiction.

Accordingly, Taylor has not sufficiently alleged diversity jurisdiction. All state law claims will be dismissed without prejudice for lack of subject matter jurisdiction. Taylor may refile her state law claims in state court, where federal jurisdiction will not be an issue, if she chooses to do so.[2]

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Taylor leave to proceed *in forma pauperis* and dismiss the Complaint. All Title VII claims will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim and all state law claims will be dismissed for lack of subject matter jurisdiction, *see N.J. Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 n.8 (3d Cir. 2011) (explaining that dismissals for lack of subject matter jurisdiction are "by definition without prejudice" (citation omitted)). No leave to amend will be given, as under the circumstances of this case, amendment would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-113 (3d Cir. 2002).

An appropriate order follows dismissing this case, which shall be entered separately. *See* Fed. R. Civ. P. 58(a). amendment.

**BY THE COURT:**

**/s/ John Milton Younge**
**JOHN MILTON YOUNGE, J.**

[2] The Court expresses no opinion on the merit of any such claims.